Alright, well then we'll hear the case of Gardner v. Mutz. I hope I'm saying that name correctly. Counsel can correct me. Good afternoon, your honors. Good afternoon. My turn? Yes, sir. Okay, good afternoon, your honors. May it please the court, I am David McAllister, the counsel for the appellants. The law in this area of monument protection is advancing rapidly. Since this case was filed a year ago, there have been significant decisions handed down by a number of courts, the Supreme Court on down. The topic is First Amendment freedom of speech here in the context of war memorials. Who has the freedom of speech? Who controls it? Who defends it? This case is an inversion of the common pattern in that the plaintiffs are not offended observers. Seeking to remove a monument as in American Legion case in Pensacola, the 11th Circuit case. But rather they're trying to maintain their speech and restrain a government entity from suppressing it, which is more like the Alabama v. Birmingham case in the Alabama Supreme Court. All of these cases have been submitted as supplemental authority and so have not been argued in the pleadings or briefs. An amicus was offered, which would have helped, but that was denied. Well, it didn't follow the rules, so we have to follow rules around here. May I ask you... So in your prayer for relief in your complaint, you say you asked the court to prevent the city of Lakeland from removing the, you know, from the historic Mon Park, the monument, or obscuring it. So that's already happened, and I don't... I mean, why in this case over with? It's moved. Well, Your Honor, the cases that my adversaries have propounded for mootness are based on intervening actions. The action in this case was caused by the defendant themselves, the city themselves. They can't bootstrap their mootness argument on an action that they themselves commit. Well, I mean, the district court, if I may, the district court told them, you can move it, and they did. And so now, I mean, I don't see anywhere in your complaint where you've asked for any relief from the situation that the court currently has before it. I mean, I don't think there's anything that you have asked for in your lawsuit that we can give you at this point. Well, the appeal is from the dismissal of the lawsuit, which would have adjudicated the issues of whether or not the city could do the removal. The city is at risk. When it removes the monument before the adjudication, the full adjudication of the case, including the appeal, it takes the risk. This case is certainly subject to reoccurrence, and there isn't an adequate remedy without a decision. So this is Judge Newsom. Without giving away any of your client confidences, did you consider seeking a stay pending appeal? And if not, why not? And if so, why isn't your failure to do so well-nigh dispositive of the mootness issue? We were under the understanding that a request for a stay was not necessary. We wanted to move directly to the appeal and that a stay would be ineffective. Now, hold on. Unpack that for me. Why were you under the impression that a stay was unnecessary? And separately, why were you under the impression that a stay would have been ineffective? It was not a requirement to bring the appeal. The appeal was based on the issues that we wanted to bring forward to this court. The second part of the question? You said that you didn't think it was necessary and that you didn't think it would be effective. Those sound like two different things to me. One is we don't need one, and one is we can't get one. The restraining order, we had asked for a restraining order, and it had actually been denied by the middle district. But that was before the fact? You don't mean after the fact, do you? Yes. Where was that motion for a restraining order? Where can we find that in the record? Let's see. I'm looking. It's in the motion for temporary restraining order and preliminary injunction. It's in the beginning of the case. Well, that's your complaint, right? Yes. We mean after the district court said the city can move it. Did you seek a stay pending appeal to prevent from happening precisely what happened? No, because it had actually happened by that time. The timeframe was very short here. Maybe I can turn you to another question. The monument still stands. It's just in a different place. Can you identify for me what your liberty interest is in having it in one park as opposed to another? Yes, Your Honor. As in all real estate questions, there are really three answers. They are location, location, location. But I'm talking about your interest, your constitutional interest in the location. Where does that come from? What is it? Define that for me. It comes from the fact that the monument has been removed from the place where it's been 100 years and where people expected it to be, where the city approved it to be, which is not in a designated and established and traditional public forum for the expression of political speech. It's not in the historical district. It's been pushed off to a closet. There is a very distinct difference between where it had been and where it's been put. As I understand it, you're making a due process claim, right? I'm making a free speech claim, Your Honor. Okay. The monument still stands. How is your free speech being violated? Because the free speech was removed from a traditional public forum, moved to a different location. Is there any evidence in the record about why one gives fuller play to your free speech than the other location? Is there anything in the record about that? Yes, there is, because it's the historical aspect of Munn Park that had been established where the monument had been placed in 1910. That was a traditional public forum. Is there anything in the record about the attractiveness of Veterans Park? No. Okay. Counsel, two-minute warning. Thank you. Simply put, on the issues, the plaintiffs do have standing. They have personalized injury, at least as much as the Rabin plaintiffs did and the Pensacola plaintiffs did. So this is Judge Newsom. Explain to me why it is that your clients have standing. We've said and the Supreme Court has said that it has to be a particularized injury, something that they suffered distinctly and apart from lots of other people. It seems like what you're saying are things sort of like to advocate for Southern heritage or history. The most specific, it seems to me, that you get is to say that some of your clients have deceased Confederate Veterans in their lineage. But, I mean, lots of other people can say that, too. So why is the injury here particularized? They're part of that group, yes, Your Honor, but that particularized injury is enough that they are descendants and the original speech of the monument continues through them, down through generations. They do have their particularized injury because of their relationship to the original monument. So do you mean anyone who has in his or her lineage Confederate soldiers would have standing with respect to the monument? That strikes me. I mean, you know, I live in Alabama. I have no idea what my lineage is, but that strikes me that's a pretty broad class of people. That is a very broad class, but the specific group that erected the monument was the United States, the United Daughters of the Confederacy, who had dedicated the monument to the United Confederate Veterans, whose heirs in the signs are the Sons of Confederate Veterans, who is one of the plaintiffs. So it's these particular, this line of descent is very particularized. All right, thank you. We'll hear from you on rebuttal. Good afternoon, and may it please the Court. My name is Christy Hatcher-Bolen, and I represent what I will refer to as the City Appellees. Mayor Mutz, City Manager Delgado, as well as Commissioners Selvidge, Trawler, and Walker. There are two primary issues before this Court, and they are both premised upon the relocation of the Confederate monument. And those are whether appellants stated a cause of action for violation of their free speech rights, based upon that relocation, and whether the appellants had standing to assert due process claim, and whether they stated a due process claim, based on the relocation of the monument from one city park to another. The answer to both of those questions is no. First, there's no standing. Appellants have no legally cognizable interest in the monument, and they cannot demonstrate an injury in fact caused by the relocation of that monument from one park to another. At best, appellants are merely bystanders who sympathize with the monument. But they can still express their free speech rights, regardless of where the city has moved it, and it did just move it from one city park to another. Second, there's simply no claim here. The monument is government speech. That's very clear under Summum, and under Walker, and under this Court's decision in MAC. And so whatever the city decided to do with it is not subject to scrutiny under the Free Speech Clause. Likewise, because it's government speech, appellants do not have a property or a liberty interest in the monument, and they have no due process claim. The District Court properly dismissed these claims, and so we're asking this Court to affirm. Now, I want to just pick up briefly on something that the Court picked up on immediately, and that is mootness. The issue presented was whether the city could move the monument. And there's no longer a live case or controversy because the city did in fact move it. Counsel, this is Judge O'Scanlan. Isn't it physically possible to move the monument? Obviously, you moved it once. It could be moved again. What is your thought? The city went to great expense to do that, because the city – this is not a destruction case, by the way. I just want to point that out. If that's the case, all the more reason that technically this may not be moot, because if we were to side with the appellant here on the merits, why the monument would have to be returned, would it not? Well, I think in this case, because it is coming to you on a motion to dismiss, I think it probably would go back for further review. Although, admittedly, we do believe that they presented a very thorough complaint that explained why this is government speech. And yes, I do agree with you, Judge, that it would be of great expense to the city to do that. But they technically could. But this really doesn't fall under one of those exceptions. We're talking about one monument here, so it's not something that's capable of repetition but evading review. And plaintiffs, importantly, they did not take all steps necessary to perfect their appeal and preserve the status quo. As this court pointed out, there was no motion for stay, and the notice of appeal was actually filed on February 5th. And it was not moved until March 26th. That's actually set forth in our supplemental appendix. There is an affidavit there of Bob Donahue that sets forth the timeline for this. This is Judge Newsom, just to follow on Judge O'Scanlan's question. Is it your position, then, that the failure to seek to stay in and of itself sort of moots the case? That sort of because the pox is on their house, the case is moot? I mean, isn't Judge O'Scanlan right that whether they sought to stay or didn't, and sort of whatever the expense may be, it's at least physically possible to move the thing back? This isn't like the ordinary mootness case where the plaintiff gets what he or she wants in the interim, and thus the court can't give him or her any further relief. Here, the plaintiff sort of lost big time and failed to preserve the status quo. But, I mean, it is physically possible to move the thing back. And so is it your position that the failure to seek to stay in and of itself renders the thing moot? I think, no, that would be an exception to mootness. And what we are basically saying is that those exceptions to mootness don't apply. There has been a passage of time, and I think the case that I'd most liken this to is the Brooks v. Georgia State Board of Elections case where you basically had a settlement agreement, and there were certain timelines in the settlement agreement. And certain things were supposed to be done by certain time periods. And the time period came and passed, and those things weren't done. And the plaintiffs came back and said, well, but they didn't do these by the time frame, and now we've reverted back to the old style of how we appoint judges. And the court basically said it's still moot. Well, that is something like we have here. They could have pressed beforehand, and they didn't. And it is technically possible to move it back. But, again, they are under an obligation to preserve the status quo. And they could have done that easily, at least attempted to, through the filing of a motion for stay and for injunction, and they simply did not do that. But in addition to mootness, I think the overarching matters for the appellants, or I'm sorry, for the city appellees, are that they have no standing in the first place. There's simply no injury in fact. And consequently, there's no connection between any injury and any conduct complained of. And, again, we're focused here. What Judge Martin pointed out is that the only relief they sought was to prevent the monument from being relocated from Munn Park to Veterans Park. To have that injury in fact, he's got to show the invasion of a legally protected interest that's concrete and particularized, actual or imminent, not conjectural. In their initial brief, appellants claim they were denied freedom of speech based upon the relocation of the monument. But appellants cannot prove an injury to their free speech rights based upon the relocation because they can still exercise those rights. Nothing has changed. They are free to go to Munn Park, to Veterans Park, to any park, to express their pride in Southern history, to vindicate the cause of the Confederate soldier. They are free to do that. The monument has nothing to do with that. And they also can still visit the monument. It's not in a closet. It's in a public park. Let me ask you a question. This is Judge Newsom again. So, I mean, I guess I worry a little bit about if we're just going to argue about standing sort of in the abstract in the absence of an injury, then you do worry about sort of the merging of the standing analysis and the merits analysis. Tell me if I'm wrong, but it seems to me the simpler way to do this so that the standing and merits analyses don't overlap is simply to focus on particularization and to ask whether these plaintiffs really have an injury that is separate, apart from, and different from the injury that might be suffered by lots of other people. And then you don't have to worry about, like, whether the monument still stands, whether they can still speak, any of that stuff. Am I wrong about that? No, no. I think you're not wrong. I think that's a fair point, absolutely. They are. They're more of a concerned bystander. I mean, they may be descendants of Confederate soldiers and be descendants of members of the United Daughters of the Confederacy who first petitioned to have this here, but I'm sure there's hundreds and thousands of people just like that, hundreds and thousands of people who sympathize with that monument, who look at that monument, and they feel the same way, and they have the same thoughts about preserving it. But that's not particular enough. A particularized injury has to affect you in a personal and an individual way, and they don't have that here. I think, actually, at least in this circuit, one of the best examples of that is this court's decision in, and I'm going to murder the name, Koserea v. City of Castleberry. It's the case in which this court determined that an exotic dancer lacked standing to challenge the city's revocation of her employer's business license because it was the employer's license that was revoked, and it was the employer's business activities that were shut down. She could still go dance elsewhere. She could express her free speech elsewhere. It did not touch her in a particular way. The dancer in City of Castleberry suffered no particularized injury because the action against her employer did not affect her. The revocation of her employer's business license did not impact her in a personal and individual way. She was more just a concerned bystander, and the same is true here. They assert an interest in preserving the history of the South. They assert an interest in vindicating the cause for which the Confederate veterans fought, for protecting and preserving memorials to American veterans. But like that dancer in City of Castleberry, their free speech rights are not affected whatsoever. So relocating the monument does not restrain or prevent them from exercising their free speech rights in Munn Park or any other public park. They can still visit the monument, nor does relocating that monument compel them to do or say anything. They can still continue to advocate for the preservation of Southern history. So while they have tried to distinguish themselves based upon being descendants, that special interest is not particularized enough. And basically it's a generalized grievance about what the city has decided to do. And the city has said over and over again that you cannot have a generalized grievance, even if it's sincere. That's not enough for standing. Vindicating the public interest is simply not the function of the judicial branch. But even if appellants had standing, they have no claim for violation of their free speech rights based upon summum. They cannot avoid summum. The factual differences with summum do not render its holding inapplicable. And that holding is that permanent monuments placed on public property with the government's permission are government speech. The Supreme Court reiterated that the free speech clause restricts government regulation of private speech. It does not regulate government speech. And it does not matter that a private group donated that monument to the city. The Supreme Court in summum rejected the very same argument appellants have made here. And that is a monument can convey only one message, and that's the message intended by the donor. The Supreme Court rejected that. They basically said, look, it can be a donated monument. But when the city accepts it and the city places it on its own property, that becomes government speech. And I just want to kind of segue to something that has been stated, and that's in some of the briefs as well as the supplemental authority. There's been an argument here that this is a mixed government and private speech. And I'd like to point out that the court rejected that in Walker versus Sons of Confederate Veterans. The plates were not a public forum, the license plates. The state exercised final authority over those specialty plates. And they identified with the government issuing the plate. And here the same thing is true. The commission exercised authority and control and approved the monument, and it placed it in a public park. Thank you. Can I ask you a quick question before your time runs out? Absolutely. Do you have a position or thoughts about sort of the ordering of justiciability doctrines here? You've got a mootness argument and a standing argument. I don't know. I haven't really researched it into the ground, but I don't know that we sort of privilege one over the other. Standing, in some respects, seems to be more fundamental because it's something that has to exist at the very outset of litigation. Mootness is something that might happen later. But do you have thoughts about that or a position about how a court ought to order its consideration of justiciability issues? I think that probably standing takes a bit more precedence over this, over mootness, because mootness is obviously something that may change. But standing, you have to have it at every stage of the litigation. And so I think that's something that the court really would kind of naturally take up first. And as I said, I think standing is more concrete in some respects, especially in a case like this, than mootness is. Standing is something I think the court can basically latch on to. And in this case, I'd like to point this out. This is a lot different than, say, the court's opinion in the Cambridge Christian case. I apologize. That was one of the most recent government speech cases. Here, we have a complaint that is incredibly particularized. And it lays out history, association, and endorsement. And it also lays out the selection and control by the government. It lays out all of those things. This is not a case where you're going to have to worry about are there more facts. The plaintiff provided a very complete set of facts. Thank you. We're asking this court to affirm because we believe that the dismissal was absolutely appropriate. Thank you. Thank you. May it please the court. Ashley Davis on behalf of State FLE, Florida Secretary of State. After disposing of all of the federal claims, the district court declined to exercise its supplemental jurisdiction over the remaining state claims and therefore dismissed the sole claim against the Florida Secretary of State. This declination and dismissal was without error. And therefore, if appellants have not altogether waived arguments to the contrary by not raising the issue in their initial brief, then the secretary would simply ask the court to affirm that declination and dismissal. Thank you. Thank you. Back again, Your Honors. This is David McAllister. I'd like to address that mootness issue and reaffirm that basically the city took the risk of the move after it made its decision and after the case was filed. The case is not moot. It stays as a case in controversy. The injury in fact, the injury here to these particular clients, they have a particular sensitivity to the freedom of speech, to the speech that the monument is expressing, especially in a political context, which gets a very high review in our legal system. The issue really should be whether the city has the unfettered ability to repress the speech of the monument in the public forum. The location matters. Location does matter. And in fact, it was the taxpayers that paid to move the monument, not the city so-called. It was the taxpayers, and we have a taxpayer plaintiff here. He wants it back. The psychological damage to the other plaintiffs is just as serious as it was in the Rabin case. I know Rabin is a thin reed to stand on. But basically the middle district made a serious error in relying on the Pleasant Grove versus Summon to dismiss by categorically investing the city with unfettered government-free speech, saying that there's no difference between Summon and this case. And we have had the American Legion case and the Pensacola case afterwards that distinguished Summon and is very distinguishable on the facts here. Basically all you have to do is analogize the freedom of religion issue, First Amendment issues in American Legion and Pensacola and say now that applies to free speech, another First Amendment issue. The city should not have the rights and ability to remove the historic war memorial out of the traditional public square forum unless it gives a compelling reason. There should be a strict review, strict scrutiny in this case, because in removing the monument the city exhibited an impermissible hostility to the speech of the monument and of its advocates. At least one expression of that speech was the highly protected political speech of the monument. History matters. We've seen that in the line of cases coming from the distinguished Summon and come from American Legion and Pensacola. Who has standing? If these plaintiffs, this assemblage of plaintiffs does not have standing, who does have standing to review city action? If the city has unfettered ability under its own attempt at free speech, which the Alabama case says is not protected by the First Amendment, then we're living in autocracy and no one can ever question what government does and that's not the law in this country. The government city here was hostile. It had no good reason to move it. We're asking this court to remand the case down and for a continuation of the case, take evidence, try the case, and review it in the light of the line of cases that has proceeded concerning monument protection. I think it would help to establish a standard or a test that applies in First Amendment cases as it does in establishment cases. G.K. Chesterton said the tradition is the democracy of the dead. Who speaks for the dead? And it's their descendants, it's the plaintiffs here, not the city. The city is hostile. So again, thank you very much. And we ask you to reverse the dismissal, remand the case for further continuance. Thank you. That concludes our arguments for today. Court will reconvene at 9 o'clock tomorrow morning. Thank you. Thank you. Thank you.